No. 25-20568

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE FIFTH CIRCUIT

---

JOE ANTHONY ALANIZ,
Plaintiff–Appellee,

v.

MARK CANNON, DEPUTY,
Defendant–Appellant.

---

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:22-CV-1991, the Honorable Charles R. Eskridge III presiding.

---

## BRIEF OF APPELLANT MARK CANNON

---

SUBMITTED BY:

**ATTORNEY-IN-CHARGE:**

**JOSHUA GREEN**
Assistant County Attorney
Texas Bar No. 24080915
Federal ID No. 1428074
Tel: (713) 274-5229 (direct)
joshua.green@harriscountytx.gov
**Office of The Harris County
Attorney**
1019 Congress
Houston, Texas 77002

**OF COUNSEL:**

**FRANK FORD**
Assistant County Attorney
Texas Bar No. 24012642
Federal ID No. 565385
Tel: (832) 570-7582 (direct)
Frank.ford@harriscountytx.gov
**Office of The Harris County
Attorney**
1019 Congress
Houston, Texas 77002

**Attorneys For Defendant-Appellant
Mark Cannon**

April 17, 2026.

No. 25-20568

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

---

JOE ANTHONY ALANIZ,
Plaintiff–Appellee,

v.

MARK CANNON, DEPUTY,
Defendant–Appellant.

---

Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:22-CV-1991, the Honorable Charles R. Eskridge III presiding.

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so the judges of this Court can evaluate possible disqualification or recusal.

| Plaintiff-Appellee | Counsel |
|---|---|
| Joe Anthony Alaniz | <u>Appellate and Trial Counsel:</u><br>U.A. Lewis<br>Lewis Law Group<br>myattorneyatlaw@gmail.com<br>Texas Bar No. 24076511<br>PO BOX 27353<br>Houston, TX 77227<br>Telephone (713) 570-6555<br>Fax (713) 581-1017 |
| **Defendant-Appellant** | **Counsel** |
| Deputy Mark Cannon | <u>Appellate and Trial Counsel:</u><br>Joshua Green<br>Texas Bar No. 24080915<br>Federal Bar No. 1428074<br>1019 Congress, 15th Floor<br>Houston, TX 77002<br>Telephone: (713) 274-5229 (direct)<br>joshua.green@harriscountytx.gov<br><br>Frank J. Ford<br>Assistant County Attorney<br>State Bar No. 24012642<br>Fed Bar No. 565385<br>1019 Congress, 15th Floor<br>Houston, TX 77002<br>Phone: 713-274-5166 (direct)<br>Frank.Ford@harriscountytx.gov |
| **Defendants** | **Counsel** |
| Harris County; Sheriff Ed Gonzalez | <u>Trial Counsel:</u><br>James C. Butt<br>Assistant County Attorney<br>Texas Bar No. 24040354<br>1019 Congress<br>Houston, TX 77002<br>Telephone: (713) 274-5133 |

| | Gregory Burnett<br>Assistant County Attorney<br>Texas Bar No. 24057785<br>Greg.Burnett@harriscountytx.gov<br>Telephone: (713) 274-5224 |
| --- | --- |

*/s/  Joshua Green*
**JOSHUA A. GREEN**
Assistant County Attorney

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a) and Fifth Circuit Rule 28.2.3, Appellant Deputy Mark Cannon believes oral argument will greatly aid this court in understanding the material facts of this case, especially in light of the video record.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................................III

STATEMENT REGARDING ORAL ARGUMENT ............................................. VI

TABLE OF CONTENTS................................................................................. VII

TABLE OF AUTHORITIES ............................................................................. IX

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES..........................................................................2

STATEMENT OF THE CASE..............................................................................2

    I.    RELEVANT PROCEDURAL HISTORY. .................................................2

    II.   FACTUAL STATEMENT .....................................................................4

      A. Protest Setting...............................................................................4

      B. Video Record ................................................................................5

      C. Repeated Commands and Noncompliance.....................................6

      D. Detention and Resistance...............................................................8

      E. Additional record evidence confirming noncompliance and resistance........11

      F. Claimed injuries..........................................................................13

SUMMARY OF ARGUMENT ...........................................................................13

ANALYSIS......................................................................................................14

    I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT..........................14

    II.   STANDARD OF REVIEW FOR QUALIFIED IMMUNITY .......................15

    III. STANDARD FOR VIDEO REVIEW PURSUANT TO *SCOTT V HARRIS* .......16

ARGUMENT ...................................................................................................17

    I.    ANALYSIS .....................................................................................17

A. Use of Force Standard ...............................................................................17

B. The District Court erred by not fully considering the totality of the circumstances, as required by *Barnes v. Felix* ...............................................19

C. *Barnes* as applied to the *Graham* factors .......................................................21

D. No clearly established right put Deputy Cannon on notice that his conduct was unconstitutional ...............................................................................29

CONCLUSION.................................................................................................33

RELIEF REQUESTED.....................................................................................33

CERTIFICATE OF SERVICE .........................................................................34

CERTIFICATE OF COMPLIANCE..................................................................35

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. Rapides Parish Sch. Bd.*,
  204 F.3d 619 (5th Cir. 2000)................................................................. 14

*Argueta v. Jaradi*,
  86 F.4th 1084 (5th Cir. 2023) ...................................................... 2, 3, 17

*Barnes v. Felix*,
  152 F.4th 669 (5th Cir. 2025) ....................................................... Passim

*Barnes v. Felix*,
  605 U.S. 73 (2025) ....................................................................... 2, 13, 20

*Brinegar v. United States*,
  338 U.S. 160, (1949) ........................................................................... 18

*Brown v. Callahan*,
  623 F.3d 249 (5th Cir. 2010)................................................................. 1

*Brown v. City of Houston*,
  337 F.3d 539 (5th Cir. 2003)............................................................... 15

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022) ........................................................ Passim

*Carnaby v. City of Houston*,
  636 F.3d 183 (5th Cir.2011)............................................................... 17

*Cass v. City of Abilene*,
  814 F.3d 721 (5th Cir. 2016).............................................................. 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................... 14

*DeLaPaz v. Coy*,
  786 F.3d 367 (5th Cir. 2015)................................................................. 1

*Deville v Marcantel*,
  567 F3d 156 (5th Cir 2009)................................................................. 31

*Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*,
  738 F.3d 703 (5th Cir. 2013)............................................................... 14

*Edwards v. Oliver*,
  31 F.4th 925 (5th Cir. 2022) .............................................................. 16

*Estate of Davis Ex Rel. McCully v. City of North Richland Hills*,
  406 F.3d 375 (5th Cir. 2005)................................................................. 1

*Flores v. City of Palacios*,
  381 F.3d 391 (5th Cir. 2004)................................................................. 1

*Fulton v. Staats*,
  41 N.Y. 498 (1869) ............................................................................. 22

*Goodson v City of Corpus Christi*,
202 F3d 730 (5th Cir 2000)..................................................................27, 28, 31

*Graham v. Connor*,
490 U.S. 386 (1989) .......................................................18, 22, 24, 25

*Hanks v. Rogers*,
853 F.3d 738 (5th Cir. 2017)............................................................14, 26, 27

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ......................................................................19

*Heien v. North Carolina*,
574 U.S. 54 (2014) ........................................................................18

*Johnson v. Glick*,
481 F.2d 1028 (2d Cir. 1973).............................................................19

*Joseph v. Bartlett*,
981 F.3d 319 (5th Cir. 2020)..............................................................16, 18

*King v. Handorf*,
821 F.3d 650 (5th Cir. 2016)..............................................................16

*Kisela v. Hughes*,
584 U.S. 100 (2018) ......................................................................30

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ........................................................................1

*Norman v. Ingle*,
151 F.4th 707 (5th Cir. 2025) .............................................................2, 17

*Plumhoff v Rickard*,
572 US 765 (2014) .........................................................................30

*Ramirez v. Escajeda*,
44 F.4th 287 (5th Cir. 2022) ..............................................................16

*Ramirez v. Martinez*,
716 F.3d 369 (5th Cir. 2013)..............................................................18, 23

*Scott v. Harris*,
550 U.S. 372 (2007) ..................................................................Passim

*Solis v. Serrett*,
31 F.4th 975 (5th Cir. 2022) ..............................................................15

*Stanton v. Sims*,
571 U.S. 3 (2013) .........................................................................15

*Tarver v City of Edna*,
410 F3d 745 (5th Cir 2005)...............................................................29, 30

*Terrell v. Allgrunn*,
114 F.4th 428 (5th Cir. 2024) .............................................................16

*Trammell v. Fruge*,
868 F.3d 332 (5th Cir. 2017)........................................................Passim

*Tucker v City of Shreveport*,
   998 F3d 165 (5th Cir 2021)..................................................................... 30
*United Fire & Cas. Co. v. Hixson Bros., Inc.*,
   453 F.3d 283 (5th Cir. 2006)................................................................... 15
*Vincent v. City of Sulphur*,
   805 F.3d 543 (5th Cir. 2015)................................................................... 19

Statutes

28 U.S.C. §1291 ....................................................................................... 1
42 U.S.C. §1983 ..................................................................................... 33
Texas Penal Code § 38.03(a) ................................................................. 23

Rules

Fed. R. App. P. 32(a)(5)......................................................................... 35
Fed. R. App. P. 32(a)(6)......................................................................... 35
Fed. R. App. P. 32(a)(7)(B) ................................................................... 35
Fed. R. App. P. 32(f).............................................................................. 35
Fed. R. App. P. 34(a) ............................................................................... 6
Fed. R. Civ. P. 56(a)............................................................................... 14
Fifth Circuit Rule 32.2 ........................................................................... 35

## JURISDICTIONAL STATEMENT

This court has jurisdiction over appeals from a district court's order denying Appellant's Motion for Summary Judgment based on qualified immunity. 28 U.S.C. §1291. "The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine 'to the extent that it turns on an issue of law.'" *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

This Court reviews a denial of a summary judgment based on qualified immunity by determining whether the lower court erred in assessing the legal significance of the conduct that it deemed sufficiently supported the denial of summary judgment. *Brown v. Callahan*, 623 F.3d 249, 252 (5th Cir. 2010). This Court's jurisdiction over qualified immunity extends to the elements of excessive force that are directly implicated by this defense. *DeLaPaz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015). This Court reviews *de novo* the district court's conclusions concerning the legal consequences - the materiality of the facts. *Estate of Davis Ex Rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005).

Here, Deputy Cannon asserts that the trial court erred in its factual analysis of qualified immunity regarding excessive force, particularly in light of existing videos and deemed admissions. The Court need not rely on Alaniz's description of the facts, where the record discredits that description, but should instead consider the facts in

1

the light depicted by the videos. *Scott v. Harris*, 550 U.S. 372, 381 (2007). Because excessive-force claims turn on the totality of the circumstances, the Court may not isolate a few seconds of the encounter from the dangerous events leading up to the detention. *Barnes v. Felix,* 605 U.S. 73 (2025). To the extent that there are factual disputes, the Court is permitted to review the materiality and genuineness of those disputes where, as in this case, video evidence is available. *Norman v. Ingle*, 151 F.4th 707, 711 (5th Cir. 2025) (citing *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023)).

## STATEMENT OF THE ISSUES

1. Whether Deputy Cannon is entitled to qualified immunity to excessive force claims where video evidence and Alaniz's own admissions show repeated lawful commands, Alaniz's noncompliance and resistance during a dangerous protest, and only a limited use of force by Deputy Cannon.

2. Whether the District Court erred in denying qualified immunity because no precedent squarely governed the particular facts Deputy Cannon confronted or placed beyond debate that Cannon's conduct violated the Fourth Amendment.

## STATEMENT OF THE CASE

### I.   Relevant Procedural history.

This is a civil rights lawsuit that stems from an arrest on May 29, 2020. Plaintiff Joe Anthony Alaniz ("Alaniz" or "Plaintiff") alleges he was subjected to false arrest and excessive force during a protest in Houston. ROA.369-389.

Mr. Alaniz filed suit on May 28, 2022 in the 234th Judicial District Court, Harris County, Texas, under Cause Number 2022-32136. ROA.21-24. Mr. Alaniz named Deputy Vanessa Esqueda, Sgt. Ana Ortiz, Sheriff Ed Gonzalez, Harris County, and Deputy Mark Cannon as defendants. *Id*.

Defendant Harris County removed the cause of Action to United States District Court Southern District of Texas Houston Division on June 17, 2022. *Id*. Cannon moved to dismiss. ROA.114. Alaniz amended his complaint. ROA.152. Defendants then moved to dismiss all claims against them. ROA.190, 220, 242. Alaniz filed no opposition. The motions were thus granted, and the first amended complaint was dismissed without prejudice. ROA.282.

Alaniz filed a motion for reconsideration and a motion to amend. ROA.285. The motion to amend was granted, but the claims against Esqueda and Ortiz were later dismissed again for failure to serve them. ROA.360, 367.

Alaniz then filed a second amended complaint. ROA.369. Defendants again moved to dismiss all claims. The motion to dismiss by Cannon was denied. All claims against Sheriff Gonzalez were dismissed, the official capacity claims with prejudice, and the individual capacity claims without prejudice. ROA.1260.

The active pleading in this case is Plaintiff's Second Amended Complaint. ROA.369-401. Defendant Deputy Mark Cannon ("Deputy Cannon" or "Cannon")

timely moved for summary judgment on November 14, 2024. ROA.2886-3050. Harris County similarly moved for summary judgment. ROA.1469-2885.

On December 1, 2025, the Court entered an Opinion and Order granting Harris County's Motion and granting in part and denying in part Deputy Cannon's Motion. The Court held that Deputy Cannon is entitled to qualified immunity on Plaintiff's false-arrest claim, but not entitled to qualified immunity on Plaintiff's excessive-force claim. ROA.3634-3653. At this stage, the only claim remaining against Deputy Cannon is Alaniz's Fourth Amendment excessive-force claim. ROA.3634-3653.

On December 11, 2025, Deputy Cannon timely filed a Notice of Appeal as to the Court's denial of qualified immunity on the excessive-force claim. ROA.3668-3671.

## II. Factual Statement

### A. Protest Setting

The events at issue occurred on May 29, 2020, at the area of McKey Street and I-10 in the City of Houston as Plaintiff observed protests related to the death of George Floyd. At all relevant times, Deputy Mark Cannon was acting under the color of the authority of state law of the State of Texas as a law enforcement officer among other Harris County Sheriff's Deputies and Houston Police Officers massed at the scene. ROA.369-389.

4

The Record reflects that Mr. Alaniz was repeatedly ordered to move from the area of protest during dispersal operations. Mr. Alaniz failed to fully comply with those orders. Alaniz argued with officers; delayed his response to officers' commands; ignored officers' commands to stay back from the devolving protest scene near a major Houston freeway; repeatedly ignored officers' commands to not come up behind them as they tried to move protestors away from the freeway; and ultimately resisted detention by Deputy Cannon and other officers.

## B.    Video Record

The material facts of the encounter are largely established by video evidence in the summary-judgment record. See *Scott v. Harris*, 550 U.S. 372, 380 (2007). That record includes approximately 21 minutes of Alaniz's own cell-phone video and body-worn-camera footage from Sgt. Ortiz and Deputy Cannon. ROA.2909-2911. (Alaniz's Cell Phone Video, Deputy Cannon's body-worn camera video, Sergeant Ortiz's body-worn camera video). Sgt. Ortiz's body-worn camera ("BWC") captured the beginning of the detention, while Deputy Cannon's body-worn camera more clearly captured the remainder of the detention and handcuffing.

Deputy Cannon's BWC did not have sound that day; he testified that he had been out for extended hours that day and suspected his camera and sound were dying. He did not know it was muted. ROA.3013. Cannon deposition, p. 38, lines 19-23.

Nevertheless, the sound was captured on Alaniz's video and on Sgt. Ortiz's body-worn camera. ROA.2909, 2911.

## C.    Repeated Commands and Noncompliance

This incident occurred on the day of the George Floyd protest in Houston. Alaniz said at that time he had no idea why people were protesting. ROA.2951. Alaniz deposition, p. 107, lines 5-11. Houston police, along with Harris County deputies, were trying to prevent protesters from taking over the I-10 freeway. Alaniz's own 22-minute cell phone video captures this chaotic scene. See generally, ROA.2909. Alaniz's cell phone video, 1:00-3:30.

Officers that day had been threatened, had objects thrown at them, faced angry cursing by protesters, and were out on the streets for several hours. See ROA.2911. (note that citations to Sgt. Ortiz and Deputy Cannon's BWC are citations to the BWC time stamps) Sgt. Ortiz's BWC 19:44-19:57; 19:44:30 (Rock is thrown); 19:56:56 (there is radio traffic, that rocks are being thrown, "I need gas out here now, it's out of control, they're throwing rocks." Shortly thereafter, there is a call for medical attention for a report of an officer hit by a rock nearby at Capitol and Carolina). See also ROA.2909. Cell phone video, 6:27-8:50 (Alaniz's video shows three protesters cuffed by officers and taken away); See also ROA.2911. Sgt. Ortiz's BWC 19:57-20:00.

6

Police are shown on the cell phone video and Sgt. Ortiz's video telling the protesters to "Move!" and "Move Back!" as police steered the crowd away from the freeway. ROA.2909. Cell phone video, 8:11-10:20. ROA.2911. Sgt. Ortiz's BWC 19:57-20:00.

Mr. Alaniz was told more than a dozen times to move and to not follow behind the officers. In Sgt. Ortiz's body-worn camera video (ROA.2911.) at 20:03:10, Sgt. Ortiz finds Alaniz behind officers as they move the crowd off the frontage road. Sgt. Ortiz tells Alaniz he cannot be behind the officers. She tells Alaniz "Do me a favor get back over there please. You can't be behind us. Come on." Alaniz refuses to leave. Sgt. Ortiz says "Bye, go, leave! Go! You can't be behind us." She says he needs to grab his bike and go, and he needs to leave now. An officer then physically escorts Alaniz to the side of the road. ROA.2911. Timestamp 20:03-20:04.

In Alaniz's cell phone video (ROA.2909.), at 6:00, an officer gestures to Alaniz to exit the roadway. At 11:02-:08, another officer tells Alaniz to go to the other side of the police line or to "move back" or "over" and Alaniz does not move. At 13:00-13:25, as described above, Sgt. Ortiz tells Alaniz to "go" and that he cannot "stand behind" the officers. Alaniz is then told that he "need[ed] to leave now." Alaniz argues with officers. Alaniz is also told he is not moving fast enough. At 13:44, another unknown officer tells Alaniz he is "happy" Alaniz is there, but he has to move. At 19:26-20:19, Alaniz leaves the area behind the McKee street sign where

he was told to stay, and starts to follow officers again. At 20:41-:45, Cannon is heard telling Alaniz to "get your feet that way" telling him to move in the opposite direction.

Sgt. Ortiz again tells Alaniz to leave and he does not. Sgt. Ortiz says, "Hey, I already told you to leave. Come on leave. Sir, keep moving, I've already told you again." ROA.2911. Ortiz Video 20:11:20. Sgt. Ortiz tells Alaniz "Sir, keep moving, keep moving, keep moving, keep moving." ROA.2909. Cell phone video, 20:50-:55; ROA.2911. Ortiz Video 20:11:28-20:11:35. Sgt. Ortiz tells Alaniz to get on his bike and move twice. ROA.2909. Timestamp 21:01. And ROA.2911. Timestamp 20:11:35. Cannon asks Alaniz, "Do you want to move your bike or do you want to go with me?" and then says "move your bike that way." Sgt Ortiz then says again, "I already told you to move." ROA.2909. Cell phone video, 21:04.

Alaniz moves a few feet south and then stops again. ROA.2911. Timestamp 20:11:44. Alaniz is told to keep going several more times. At 20:12:23. Alaniz tells the officers to "relax, I'm not doing anything." ROA.2911. Timestamp 20:12:13.

The events immediately preceding Alaniz's detention, as well as the detention itself, are captured on Deputy Cannon's body-worn camera from time stamp 20:11 to 20:14. ROA.2910.

**D.    Detention and Resistance.**

8

Sgt. Ortiz sees officers to her left begin to run forward to the south. She says "uh oh what happened", the line begins to rapidly move the crowd south on the 900 block of McKey Street, and Sgt. Ortiz tells Alaniz he really has to move. ROA.2911. Timestamp 20:12:23.

Sgt Ortiz then tells Alaniz, "Ok. Move. Move. Guys y'all need to really move. Move that way! Move now! Move. Move now. Grab it and get on that bike!" (ROA.2909. Timestamp 21:49-21:56; ROA.2911. Timestamp 20:12:23). Sgt. Ortiz and Deputy Cannon walk to Alaniz. At first he refuses to move. He then moves south slowly. Deputy Cannon tells Alaniz, "Get on your bike and drive." Sgt Ortiz then begins to physically move Alaniz's bike, pushing it forward with her baton, while Alaniz resists being moved forward. ROA.2911. Ortiz video 20:12:43.

Deputy Cannon ultimately gives Alaniz a count of five to get on his bike and move, but Alaniz does not comply. ROA.2909. Cell phone video 22:03; ROA.2911. Timestamp 20:12:38. Deputy Cannon then places a handcuff on Alaniz's right wrist. As Deputy Cannon takes hold of Alaniz's right hand, Sgt. Ortiz's video shows Alaniz fully turn toward Deputy Cannon and confront him face-to-face. ROA.2911. Timestamp 20:12:42.

Sgt. Ortiz's camera does not show the remainder of Alaniz's cuffing as she moves away toward others in the field and then moves south with the line as they move the crowd down McKey Street. ROA.2911. Timestamp 20:12:42.

Plaintiff admits he pulled away and resisted as Deputy Cannon and others detained him. ROA.3660-3667. Admission No. 17. Deputy Cannon's BWC shows Alaniz as he pulls away from Deputy Cannon. After turning to confront Deputy Cannon, Alaniz quickly turns and pulls his arm away from Deputy Cannon. ROA.2910. Timestamp 20:12:43. Deputy Cannon is left only holding handcuffs. ROA.2910. Timestamp 20:12:42. Deputy Cannon pulls Alaniz's right arm behind Alaniz's back. Alaniz pulls it away again.

The detention then moves to the ground. Deputy Cannon's BWC shows that officers did not initiate a takedown of Alaniz. After pulling his hand away, Alaniz drops to the ground into a seated position. Alaniz continues to try and pull his right arm away several times as he sits. Alaniz drops to that position on his own volition. The video does not show a tackle, leg sweep, kick, punch, or other forced takedown. See ROA.2910. Cannon video, 20:12:42-20:12:47.

Alaniz is then seen seated on the ground with both feet in front of him. He then lies backward and rolls onto his stomach. He tries to pull his right arm away from another officer as he rolls. Alaniz holds his right arm over his head and refuses to put it behind his back. Alaniz then places his left arm underneath his body, lies on it, and refuses officers' attempts to secure that arm for detention. See ROA.2910. Cannon video, 20:12:48-20:12:58. It takes four officers to safely remove Alaniz's arm from under his body and place him in handcuffs.

**E.   Additional record evidence confirming noncompliance and resistance**

The foregoing account is confirmed by Appellee Alaniz's own testimony and the other record evidence. Mr. Alaniz testified that he believes that because he was not an official protester he was free to do as he pleased. ROA.2949. Alaniz deposition, p. 103, lines 10-24. Alaniz testified that he was told three times by three different officers to move away from the protest. *Id.* ROA.2950. Alaniz depo, p. 104; lines 21-25. It was more than three, as his own video shows.

Mr. Alaniz admits that the scene was dangerous as he testified that he did have concerns for his safety, and that he had never seen a crowd like this in his 46 years living in Houston. ROA.2952. Alaniz deposition, p. 123, line 17 through p.125, line 21; ROA.2955. p. 127, line 13 through p. 128, line 25. Alaniz remembers people yelling at the police officers. ROA.2959. p. 139, lines 13-16; ROA.2962. p. 146, line 17 through p. 147, line 17. He saw people being taken to the ground by officers. ROA.2964. Alaniz deposition, p. 149, line 8 through page 150, line 25.

Although he claims he was live-streaming with his cell phone video, Alaniz testified that he was not working for traditional media as a journalist. ROA.2957. Alaniz deposition, p. 134, lines11-22. He acknowledged he was told to move away from protesters. He did not listen. ROA.2967-2969. Alaniz deposition, p. 154, line 4-25; p. 156, line 19 through p. 157, line 8; p. 157, line 19-22 (Q. And we have been over this. This is another officer. He specifically asked you to move and you didn't

want to, correct? A: Correct.) Alaniz's testimony that he was not a protester, however, is not material; he was part of a crowd that was dangerously surging around officers and the freeway. ROA.2960-2961. Alaniz deposition, p. 142, lines 24 through page 143; ROA.2962. p. 146, line 1-21. Mr. Alaniz saw others get arrested and continued to follow behind officers. ROA.2965-2966. page 150, line 13 through p. 151, line 25.

Sgt. Ortiz testified that she was also concerned with the protesters' safety and the officers' safety that day. ROA.2993-2996. Ortiz deposition, p. 123, line 3 through p. 126. See also ROA.3018. Sgt. Ortiz's statement after protest. Sgt. Ortiz testified that the scene itself was dangerous as protesters were throwing paint on officers, throwing rocks at them and cursing. ROA.2995. Ortiz deposition, p. 125, lines 13-25; ROA.2996. p. 126, lines 1-17.

Sgt. Ortiz testified that the officers did not know if the protesters had weapons. ROA.3000. Ortiz deposition, p. 130, line 1-20. Sgt. Ortiz testified that having protesters in front of the officers and other people behind them was a safety concern for the officers. ROA.2997-2999. Ortiz deposition, p. 127, line 1 through p. 129, line 9.

Sgt. Ortiz recalls asking Alaniz to move several times. ROA.2970. Alaniz deposition, p. 158, line 3 through p. 161, line 15. Ortiz remembers Alaniz arguing with her each time she asked him to move. ROA.3000-3003. Ortiz deposition, p.

12

130, line 24 through p. 133, line 14. Sgt. Ortiz notes that Alaniz was the only person not in compliance with "our orders" to move away. ROA.3004. Ortiz deposition, p. 136, lines 2 through p. 137, line 20.

### F.   Claimed injuries

Alaniz now complains of shoulder injuries, but he acknowledges that he injured his shoulder and neck in a previous bike accident and previous motor vehicle accident. (Ex. 10 to Cannon's MSJ (sealed medical records filed at Document 99, Bates 379).

<u>**SUMMARY OF ARGUMENT**</u>

Deputy Cannon is entitled to summary judgment and qualified immunity. There are no material facts otherwise. Deputy Cannon did not use excessive force, did not violate Alaniz's rights and there is no clear consensus of cases that state otherwise.

Under *Barnes v. Felix,* 605 U.S. 73 (2025), the reasonableness inquiry turns on the totality of the circumstances, not a freeze-framed view of a few seconds in isolation. Here, the video evidence shows a tense, dangerous protest-dispersal operation near a major freeway, repeated commands to move, Alaniz's continued noncompliance, and his resistance once Cannon began the detention. Viewed in the light depicted by the videos, Cannon's limited use of force was a reasonable response

to a rapidly evolving safety situation and does not amount to a constitutional violation.

## ANALYSIS

### I.   Standard of Review for Summary Judgment

"This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Trammell v. Fruge,* 868 F.3d 332, 338 (5th Cir. 2017)(quoting *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party moves for summary judgment on an issue where that party bears the ultimate burden of proof, it must establish a prima facie case with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)).

This Court reviews the evidence in the light most favorable to the nonmoving party, *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006), but "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

Factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

## II.   Standard of Review for Qualified Immunity

In a qualified immunity case, the ordinary burden of proof is "alter[ed]." *Solis v. Serrett*, 31 F.4th 975, 980 (5th Cir. 2022). All a defendant must do is plead the defense, then the plaintiff must show the "allegedly wrongful conduct violated clearly established law." *Id.* (quoted case omitted).

"When an officer invokes qualified immunity, as here, the burden shifts to the plaintiff to first demonstrate (1) the officer violated a constitutional right and (2) 'the unlawfulness of [the officer's] conduct was clearly established at the time.' *Barnes v. Felix,* 152 F.4th 669, 675 (5th Cir. 2025)(quotations and citation omitted).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013).

The Fifth Circuit does "not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Terrell v. Allgrunn,* 114 F.4th 428, 434 (5th Cir. 2024). (quoted case omitted). In other words, qualified immunity shifts the summary judgment burden to plaintiffs to show the defense is not available. *Joseph v. Bartlett*, 981 F.3d 319, 329-330 (5th Cir. 2020). Plaintiffs must establish that the allegedly wrongful conduct violated clearly established law and there is a genuine issue of material fact as to the reasonableness of the conduct. *King v. Handorf,* 821 F.3d 650, 653-654 (5th Cir. 2016). See also *Edwards v. Oliver*, 31 F.4th 925, 928-929 (5th Cir. 2022).

Both qualified immunity prongs do not need to be shown. *Ramirez v. Escajeda*, 44 F.4th 287, 291–94 (5th Cir. 2022)(Fifth Circuit grants qualified immunity in an excessive force case solely on clearly established prong, noting that the other prong was not challenged). Here, especially in light of the video evidence, there was no constitutional violation, no violation of clearly established law, and no genuine issue of material fact exists.

## III. Standard for video review pursuant to *Scott v Harris*

The material events at issue are captured on video. The summary-judgment record includes Alaniz's own cell-phone video and body-worn-camera footage from Sgt. Ortiz and Deputy Cannon. ROA.2909-2911.

16

Here, Deputy Cannon asserts that the trial court erred in its factual analysis of qualified immunity regarding excessive force, particularly in light of existing videos and deemed admissions. The Court need not rely on Alaniz's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videos. *Scott v. Harris,* 550 U.S. 372, 381 (2007). The Court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir.2011). When one party's description of the facts is discredited by the record, we need not take his word for it but should view "the facts in the light depicted by the videotape." *Scott,* 550 U.S. at 380–81.

To the extent that there are factual disputes, the Court is permitted to review the materiality and genuineness of those disputes where, as here, video evidence is available. *Norman v. Ingle*, 151 F.4th 707, 711 (5th Cir. 2025) (citing *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023)).

<u>**ARGUMENT**</u>

**I.   Analysis**

**A.   Use of Force Standard**

At this stage, the only claim remaining against Deputy Cannon is Alaniz's Fourth Amendment excessive-force claim. ROA.3634-3653.

"To establish a Fourth Amendment violation based on an officer's use of excessive force, plaintiffs "must show: (1) an injury[;] (2) which resulted from the use of force that was clearly excessive to the need[;] and (3) the excessiveness of which was objectively unreasonable." *Barnes v. Felix*, 152 F.4th 669, 674 (5th Cir. 2025) citing *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013).

In *Graham v. Connor*, "the Supreme Court outlined a few considerations that inform the need for force: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citing to *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Fifth Circuit reviews these considerations "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

The touchstone is reasonableness. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, (1949)).

Further, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490

18

U.S. at 396–97 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). And as *Buehler* notes, even if the officer violated the Fourth Amendment, plaintiff's claims against him cannot proceed unless he overcomes qualified immunity. *Buehler v. Dear*, 27 F.4th 969, 980–81 (5th Cir. 2022) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The plaintiff has the burden of showing that the unlawfulness of the defendant's conduct was clearly established at the time it occurred. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Courts of appeal are free to decide which of the two prongs of the qualified immunity analysis to address first." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam). But both prongs do not need to be satisfied.

**B.    The District Court erred by not fully considering the totality of the circumstances, as required by *Barnes v. Felix***

Prior to *Barnes v Felix*, The Fifth Circuit was bound by this circuit's "moment-of-threat" rule when evaluating deadly-force cases, especially shootings. Under that doctrine, "[t]he excessive force inquiry [was] confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting [/use of force]," and "any of the officers' actions leading up to the shooting [/use of force] are not relevant." *Barnes v. Felix*, 152 F.4th 669, 672 (2025).

The Supreme Court in *Barnes,* however, held the moment-of-threat rule improperly constrains a court's temporal analysis of whether an officer acted

reasonably in using force and may not be applied. *Barnes v. Felix*, 605 U.S. 73, 79 (2025).

The Supreme Court held that any claim "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Barnes v. Felix*, 152 F.4th 669, 673 (5th Cir. 2025). And in "doing so, the court must consider the **totality of the circumstances.**" *Barnes v. Felix*, 152 F.4th 669, 673-674 (5th Cir. 2025) (citing *Barnes v. Felix*, 605 U.S. 73, 79 (2025)).

The District Court in this case committed the same error the Supreme Court condemned in *Barnes* by narrowing its analysis to a segmented view of the encounter and discounting the circumstances that led to the use of force. *Barnes* rejects that approach. To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment. *Barnes v. Felix*, 605 U.S. 73, 76 (2025).

Courts may not ignore preceding events and focus only on an isolated moment, because prior facts may explain why a reasonable officer would perceive later conduct as threatening, resistant, or dangerous. *Id.* That is especially true here, where the encounter occurred during a chaotic protest, wherein officers were attempting to disperse individuals from a dangerous roadway environment, and

20

Cannon was forced to make decisions in light of both crowd conditions and Alaniz's own noncompliance and resistance. By treating Alaniz as though he were merely standing alone in a calm field and by stripping away the surrounding circumstances that informed Cannon's response, the District Court failed to conduct the reasonableness analysis *Barnes* requires. ROA.3640-3641.

**C.     *Barnes* as applied to the *Graham* factors**

Once the proper *Barnes* framework is applied, the district court's evaluation of the *Graham* factors also fails.

**As to severity**, Cannon does not seriously dispute that the underlying offenses here were, at most, misdemeanors. But the District Court erred in effectively allowing that fact to dominate the analysis. The Fifth Circuit has never treated the first *Graham* factor as dispositive.

This case is not about whether a misdemeanor, standing alone, justified force. It is about whether officers confronting an unsafe protest-dispersal scene could use limited force to detain a repeatedly noncompliant individual who pulled away during cuffing and resisted handcuffing. Even where the underlying offense is minor, the reasonableness inquiry still turns on the full circumstances confronting the officer, including immediate safety concerns and active resistance. *Trammell v Fruge*, 868 F3d 332. Here, those circumstances weigh heavily in Deputy Cannon's favor.

The District Court cites to *Trammell* to state that "misdemeanors don't typically support the use of force." ROA.3640.; *Trammell v Fruge*, 868 F3d 332, 340 (5th Cir 2017). That, however, is not the standard applied in *Trammell*. That formulation is too broad. Under *Graham*, the severity of the crime is only one factor in the objective-reasonableness analysis, and where the alleged offense is a misdemeanor, that factor generally weighs against a significant use of force; it does not, however, create a categorical rule that force is improper in misdemeanor cases. The "severity" factor from Graham militates against a use of force, but does not prohibit a use of force, where the alleged crime was a misdemeanor. See *Trammell v. Fruge,* 868 F.3d 332, 340 (5th Cir. 2017).

It is hornbook law that "the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Buehler v. Dear*, 27 F.4th 969, 980–81 (5th Cir. 2022), citing to *Graham,* 490 U.S. at 396; *see also Fulton v. Staats*, 41 N.Y. 498, 499 (1869) (Officers may "use as much force as [i]s necessary to make the arrest.").

The *Buehler* case is instructive; it is factually similar and the Fifth Circuit granted qualified immunity on excessive force. In *Buehler,* the Fifth Circuit granted qualified immunity where officers confronted a non-serious offense but encountered mild resistance, used measured and escalating responses, took the plaintiff to the ground only to complete handcuffing, and caused only minor injuries. The suspect,

22

in *Buehler,* pulled his arm away and "[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest" for purposes of Texas Penal Code § 38.03(a)." *Buehler* 27 F4.th at 984 (quoting *Ramirez v. Martinez,* 716 F.3d 369, 376 (5th Cir. 2013)).

The same is true here. Alaniz pulled away from officers multiple times as they attempted to detain him, and the video shows that he moved himself into a seated position on the ground while officers attempted to secure his arms.

The Fifth Circuit has "frequently held that officers were either constitutionally justified or entitled to qualified immunity for taking suspects to the ground in response to forms of physical resistance similar to those in which Buehler engaged." *Buehler v. Dear*, 27 F.4th 969, 988 (5th Cir. 2022).

**Dangerousness.** As to dangerousness, the District Court again looked too narrowly at the final seconds. It reasoned that Alaniz was in an open field, not adjacent to the street, and not verbally or physically threatening officers. ROA.3640-3641.

But *Barnes* makes clear that dangerousness cannot be assessed from such a freeze-framed view. The relevant question is whether, under the totality of the circumstances as perceived by a reasonable officer on the scene, Alaniz contributed to an immediate safety problem in a tense, rapidly evolving dispersal operation.

23

*Barnes v. Felix*, 152 F.4th 669, 673 (5th Cir. 2025). On this record, the answer is yes.

The Record shows officers were trying to clear protesters from a dangerous freeway-adjacent area. Alaniz repeatedly remained or returned behind officers as they confronted protesters in front of them. Ortiz testified that this front-and-back positioning created a safety concern, and that officers did not know whether persons in the crowd, including Alaniz, were armed. Alaniz himself admitted the scene was dangerous and that he understood Sgt. Ortiz did not want him behind the officers.

Properly viewed under *Barnes*, the danger was not confined to Alaniz's exact position in a single instant; it arose from the entire unstable scene and Alaniz's continued refusal to comply within it.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Here, Mr. Alaniz posed an immediate threat to the safety of the officers who were trying to control and disburse the protest crowd. One look at the BWC shows what the officers were facing that day. While he alleges his shoulder was hurt during his arrest, officers told him many times to get back from the street where protesters

were gathering, and to move out of the area. To say this was a fluid, potentially dangerous situation is an understatement. *Graham,* 490 U.S. at 396–97.

**Resistance.** As to resistance, the District Court understated both the extent of Alaniz's noncompliance and the degree of resistance shown by the summary-judgment record. This was not a case in which Alaniz was generally complying but moving imperfectly. Nor was it a case in which Cannon resorted to force after a single command or a brief hesitation. The record instead shows repeated commands over an extended encounter in a dangerous protest-dispersal setting.

Alaniz was told again and again to move, to stop remaining behind officers, and to get on his bike and leave. By his own testimony, he did not comply as directed. He admitted he was told by multiple officers to move and refused to do so.

The District Court's suggestion that Alaniz was complying at the time of arrest because he was generally moving in the same direction he was told to go misses the point. The issue was not whether Alaniz was drifting away at his own pace; it was whether he obeyed repeated commands to leave the area and stop forcing officers to manage him during an active crowd-dispersal operation.

The District Court also erred in characterizing the encounter as, at most, passive resistance. Alaniz admitted that he pulled away from Deputy Cannon during the attempted cuffing. ROA.3660-3667. That admission is significant on its own, but the video shows more. As Cannon reached for Alaniz's right hand, Alaniz turned

25

toward Cannon face-to-face and pulled his arm away, leaving Cannon holding only the handcuffs. The resistance did not end there. The video then shows Alaniz drop into a seated position, roll onto his stomach, and place his left arm beneath his body while officers attempted to secure him. It then took multiple officers to remove that arm and complete the handcuffing. ROA.2910. Timestamp 20:12:43-20:12:58.

On this record, Alaniz cannot reduce the encounter to mere passive resistance or a minimal recoil. This is therefore not a case like *Hanks,* where the plaintiff's conduct was "at most" passive resistance, and it is not fairly described by the District Court's truncated account of a single pull-away followed by an officer-driven takedown. *Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017). The takedown in Hanks was described as a tackle or a "half spear takedown". That did not happen here.

Nor does the record support the District Court's suggestion that Cannon resorted too quickly to force (or overwhelming force). This was not a sudden takedown after a first command. Before detention began, officers repeatedly ordered Alaniz to move away from the area, repeatedly told him not to remain behind them, and repeatedly instructed him to get on his bike and leave. Sgt. Ortiz physically pushed Alaniz's bike forward with her baton in an effort to move him along. Cannon then gave Alaniz a countdown to comply. Only after Alaniz still did not do so did Cannon initiate detention. And once detention began, the video does not show a

26

tackle, strike, kick, punch, or leg sweep. ROA.2910. Timestamp 20:12:43-20:12:58. Rather, after pulling away, Alaniz dropped to the ground of his own accord, and officers used limited force to secure the arm he then kept beneath his body. That sequence matters.

The District Court relies heavily on *Trammel*, *Goodson,* and *Hanks* in its resistance analysis. ROA.3639-3641. *Trammell v Fruge*, 868 F3d 332 (5th Cir 2017); *Goodson v City of Corpus Christi*, 202 F3d 730 (5th Cir 2000); *Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017).

The District Court's reliance on *Hanks* to show that "[u]se of force isn't justified where an individual's conduct amounts to mere passive resistance" overstates Fifth Circuit law. ROA.3641. The cited cases do not announce a categorical rule that no force may ever be used whenever resistance is labeled passive. Rather, they address situations in which an officer abruptly escalates to significant or overwhelming force against a person who poses no immediate threat, is not fleeing, and is engaged in, at most, passive resistance.

*Hanks* framed the rule in those terms, explaining that an officer violates the Fourth Amendment when he "abruptly resorts to overwhelming physical force" against a person posing no immediate threat or flight risk and engaging in, at most, passive resistance. *Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017).

27

*Goodson* likewise involved a materially different and more severe response, where officers tackled the plaintiff and caused serious injuries after a stop-and-frisk unsupported by reasonable suspicion. *Goodson v City of Corpus Christi*, 202 F3d 730 (5th Cir 2000)

*Goodson*, however, involves a fact pattern in which Goodson was tackled by two officers at the same time during a foot pursuit, while *Trammel* involved a knee strike and a head lock and a takedown described as two officers tackling the suspect and pulling him to the ground. See *Trammell v Fruge*, 868 F3d 332 (5th Cir 2017); *Goodson v City of Corpus Christi*, 202 F3d 730 (5th Cir 2000).

In this case, there was no such use of force. The video clearly shows that after Alaniz pulled his arm away, he moved to a seated position of his own volition. There was no tackle, strike, kick, or leg sweep. There was no constitutional violation. See ROA.2910. Cannon video, 20:12:42-20:12:47.

Unlike *Trammell* and *Goodson*, this was not a case in which officers responded to a minor pull-away by immediately tackling a nonviolent suspect to the ground. The summary-judgment record here reflects measured escalation in response to repeated noncompliance and continued resistance in a tense, fluid, and dangerous scene.

For those reasons, the District Court's resistance analysis does not stand. Even if some earlier part of Alaniz's noncompliance could be described as passive, the

28

record does not permit that characterization once Cannon attempted to detain him. At that point, Alaniz pulled away, dropped to the ground, rolled over onto his free arm, kept his arm beneath his body, and required multiple officers to complete the handcuffing. See ROA.2910. Cannon video, 20:12:42-20:12:47. Under the totality of the circumstances, the third *Graham* factor favors Cannon, not Alaniz.

This is a situation more analogous to *Beuhler*, where officers confronted a non-serious offense but escalating noncompliance, encountered mild resistance during cuffing, used measured and ascending responses, and employed only the limited force necessary to complete the handcuffing. *Buehler v. Dear*, 27 F.4th 969, 980–81 (5th Cir. 2022).

### D. No clearly established right put Deputy Cannon on notice that his conduct was unconstitutional

The District Court also erred in concluding that clearly established law gave Deputy Cannon fair warning that his conduct was unconstitutional. ROA.3641.

The District Court correctly indicated that in excessive force cases, "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v City of Edna*, 410 F3d 745, 750 (5th Cir 2005). ROA.3642.

An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v Rickard*, 572 US 765, 778–79 (2014). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver*, 410 F3d at 750. See also, *Tucker v City of Shreveport*, 998 F3d 165, 172 (5th Cir 2021). ROA.3642.

To defeat qualified immunity, Alaniz was required to identify existing precedent that placed the statutory or constitutional question beyond debate in the specific circumstances Cannon confronted. *Kisela v. Hughes*, 584 U.S. 100, 105 (2018). He did not. The right at issue cannot be defined at a high level of generality, such as a broad rule that an officer may not take to the ground a nonviolent suspect who pulls away during handcuffing. That framing strips away the facts that matter here: a volatile protest-dispersal operation, repeated commands to move and leave the area, Alaniz's admitted refusal to comply as directed, his admitted pull-away during cuffing, and his continued resistance on the ground while officers attempted to secure his arm.

While this is summary judgment, and the court must take Alaniz's allegations as true, the evidence shows Alaniz was told a dozen times to move away from the crowd and did not. Alaniz was given several opportunities to respond to officers'

instructions. The Fifth Circuit does hold that it's permissible for officers to "consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v Marcantel*, 567 F3d 156, 167 (5th Cir 2009).

As with the *Graham* analysis, the District Court also relies heavily on both *Trammel* and *Goodson* to show that Deputy Cannon received fair warning that his conduct could be considered unconstitutional. ROA.3641. See *Trammell v Fruge*, 868 F3d 332 (5th Cir 2017); *Goodson v City of Corpus Christi*, 202 F3d 730 (5th Cir 2000). But, as indicated in the resistance section above, this situation does not match *Trammel* or *Goodson*.

*Goodson* involves a fact pattern in which *Goodson* was tackled by two officers at the same time during a foot pursuit, while *Trammel* involved a knee strike and a head lock and a takedown described as two officers tackling the suspect and pulling him to the ground. See *Trammell v Fruge*, 868 F3d 332 (5th Cir 2017); *Goodson v City of Corpus Christi*, 202 F3d 730 (5th Cir 2000). In this case, there was no such use of force. The video clearly shows that after Alaniz pulled his arm away, he moved to a seated position of his own volition. There was no tackle, strike, kick, or leg sweep. There was no constitutional violation. See ROA.2910. Cannon video, 20:12:42-20:12:47.

31

*Trammel* and *Goodson* involve more severe force and different factual circumstances that are not similar enough to this case to lend any support to his claim that the Deputy Cannon violated clearly established law. See *Buehler v. Dear*, 27 F.4th 969, 987 (5th Cir. 2022).

As stated above, this is a situation more analogous to *Beuhler*, where officers confronted a non-serious offense but escalating noncompliance, encountered mild resistance during cuffing, used measured and ascending responses, and employed only the limited force necessary to complete the handcuffing. *Buehler v. Dear*, 27 F.4th 969, 980–81 (5th Cir. 2022).

Ultimately, the Fifth Circuit in *Beuhler*, concluded that the Officers stayed not only within the bounds of "clearly established law," but also within those of the Fourth Amendment. They looked beyond our Circuit and cited twelve cases showing there "is a wealth of appellate cases where comparable force by arresting officers under similar circumstances was held not violative of the Fourth Amendment. In case after case, courts upheld officers' use of takedowns to gain control of suspects who had disregarded lawful police orders or mildly resisted arrest, even when arrestees were suspected of minor offenses and the force employed appeared greater than necessary in retrospect—at least when officers' tactics caused arrestees only minimal injuries." *Buehler v. Dear*, 27 F.4th 969, 989 and footnote 71 (5th Cir. 2022).

In short, neither *Goodson* nor *Trammell* nor any other case identified by Alaniz squarely governs the particular facts Cannon confronted here. And where no precedent places the constitutional question beyond debate, qualified immunity protects the officer from suit. Deputy Cannon is therefore entitled to qualified immunity and summary judgment because the record shows no Fourth Amendment violation and, in any event, no clearly established law prohibiting his conduct under these circumstances.

## CONCLUSION

Deputy Cannon is entitled to qualified immunity. The undisputed summary-judgment evidence, including the video record and Alaniz's own admissions, shows that Deputy Cannon used only limited force in response to repeated noncompliance and active resistance during a tense and dangerous protest-dispersal operation.

Under those facts, no Fourth Amendment violation occurred; and in any event, no clearly established law gave Cannon fair notice that his conduct was unlawful. The Court should reverse the denial of summary judgment and render judgment in Cannon's favor on Alaniz's excessive-force claim.

## RELIEF REQUESTED

Deputy Cannon respectfully requests that this Court reverse the trial court's denial of summary judgment and render judgment in favor of Deputy Cannon based on qualified immunity on all claims asserted under 42 U.S.C. §1983.

/s/  Joshua A. Green
**JOSHUA A. GREEN**
Assistant County Attorney

## CERTIFICATE OF SERVICE

I certify that on April 17, 2026, I filed a true and correct copy of the foregoing brief via the Court's CM/ECF system, which will automatically serve a copy on all parties' counsel.

Appellee Mr. Alaniz's Counsel
U.A. Lewis
Texas Bar No. 24076511
Myattorneyatlaw@gmail.com
P.O. Box 27353
Houston, Texas 77227

Defendant Harris County's (Dismissed by Trial Court) Counsel
James C. Butt
Sr. Assistant County Attorney
Texas Bar No. 24040354
James.Butt@harriscountytx.gov
1019 Congress
Houston, Texas 77002

/s/  Joshua A. Green
**JOSHUA A. GREEN**
Assistant County Attorney

34

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limit of Fifth Circuit Rule 32.2 and Fed. R. App. P. 32(a)(7)(B) because, including the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains **7,615** words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, in Times New Roman 14-point typeface, except for footnotes, which are in Times New Roman 12-point typeface. Case names are italicized or underlined.

*/s/ Joshua A. Green*
**JOSHUA A. GREEN**
Assistant County Attorney